We'll hear the next case, Hernandez v. United States and the City of New York. Thanks. Thanks. May it please the court, my name is Jeffrey Rothman and I represent the plaintiff Appellant Luis Hernandez in this matter. I've reserved three minutes for rebuttal. In ruling upon the defendant's motions to dismiss on the pleadings, the district court was required to assume the truth of the facts that were pled by the plaintiff. To treat those facts in the light most favorable to the plaintiff and to draw reasonable inferences from those facts in the light most reasonable to the plaintiff. The district court did not do so, however, and because of this and in dismissing plaintiff's second amended complaint. The plaintiff, Luis Hernandez, was born in Brooklyn in 1974 and thus was a native-born citizen of this country who categorically could not be the target of an ICE detainer. Mr. Hernandez's birth, New York birthplace, was also stated clearly on the New York City Department of Corrections inmate look up screen on their publicly accessible website. Despite this and other readily available sources indicating that the plaintiff was not the proper target of an ICE detainer, an ICE officer named William Outlaw lodged an ICE detainer against him on September 27th, 2013 following his arrest for public luteness. And did so without engaging in even the most rudimentary checks to see if he was the Luis Enrique Hernandez Martinez of Honduran nationality, who the detainer apparently was intended for. As has been put in detail, if it were not for the detainer, Mr. Hernandez would have been released on his own recognizance at his arraignment and would also have been eligible at his arraignment for a plea bargain involving three days of community service and no jail time. Because of the detainer, however, and only because of the detainer, as a factual matter, $1 in nominal bail was set at plaintiff's arraignment. This was done pursuant to the criminal courts and or the New York City Department of Corrections record keeping requirements. And was routine whenever a criminal court defendant was being held on a detainer and could not be released anyway. That $1 in nominal bail, as per their own particular record keeping requirements, was set solely so that the criminal court defendant could potentially get time credits if he or she were eventually to be sentenced on the charge that was pending against him or her. As soon as a detainer is lifted, however, the $1 in nominal bail is automatically paid by the Department of Corrections and the person is released. Counsel, as to the federal defendants, here's what bothers me. And it relates to the issuance of the detainer. The man's name was Luis Hernandez. There was somebody they were looking for named Luis Hernandez. And the birthdates were the same. Isn't that right? Well, that is correct. The birthdates were the same. Including the year. The birthdates were identical. That's correct, Judge. Now, I looked up something over the weekend called the Birthday Paradox. And the Birthday Paradox says that if you have 23 people in a room, the odds are 50-50 that somebody other than person number one has a birthday on the same month and date of the year. And if you put 75 people in the room, the odds are 99.9 out of 100. Now, on that alone, why isn't the probable cause, if probable cause is necessary, but why isn't probable cause for ICE to say, we've got Luis Hernandez, we're looking for Luis Hernandez, same birthday, that's good enough to detain him? Because it's a very serious matter to take somebody's liberty and you need more than just a mere possibility that coincidentally. But I put to you that it's not a mere possibility. It approaches statistical certainty, though it never gets there. And it can be wrong. And it was wrong. But he didn't have the exact same last name. They had different names. One was Hernandez-Martinez, and one was Hernandez. And I do understand that it- Does the law require probable cause for the issuance of an immigration detainer? Yes. And so the agent didn't issue the detainer until after the arrest. Something must have notified him that there was an arrest of someone with this name. The exact mechanism of how ICE was notified is unknown, but presumably when somebody is arrested, either the NYPD or the criminal courts or the Department of Corrections sends a notification to ICE, or they just do random checks on their own. And is there any law or guidance on what an ICE agent should do in this kind of a scenario before issuing the detainer? Is there a law that says he has to do a search of the computer records? What's out there? Well, I'm not familiar with any particular guidelines that have been set by the courts as to what precisely they have to do. But they do need to do some basically rudimentary checks. And it was clearly available to them, as it was to the New York City Department of Corrections. I'm sorry, you said they do have to do some basic rudimentary checks. You accept that as a premise, and the gist of Judge Chin's question is, what's the basis for the proposition? As I said, there are readily available databases and records that will show, number one, most importantly- I understand that. I understand that. What is the basis for the assertion that as a matter of law, there's a duty to consult them? Because as I've cited in my reply papers, there is a duty to engage in reasonable investigative activities before- in order to establish probable cause where there is ambiguity. And Your Honor is aware of the Mitchell case that cited that, that Your Honor was the district judge on. There's Bevere v. Hukal that was cited by Olivari v. Mayer in this circuit, that said that reasonable steps, reasonable inquiry must be made in ambiguous circumstances. And the Supreme Court gutted Mitchell. The Supreme Court did Wesby, and this court then got rid of Mitchell, and that's the state of affairs with Mitchell. But that didn't have to do with . . . Does the complaint . . . When we get reversed and the Supreme Court reverses again, we remember it. We district judges. Does the complaint contain any allegations with respect to what kind of an inquiry was made or should have been made, whether it was a reasonable inquiry? Well, there is an allegation that the most basic and simple inquiry of clicking a computer mouse and checking the Department of Correction's own website, which stated that Mr. Hernandez was born in New York, was not done. And also that there's a rap sheet available that would state this, this information. Are there errors in that database? Well, there may be, but if there's a trigger, if there's something that a red flag that immediately says that this person could not categorically and paradigmatically be the target of an ICE detainer, then definitely some further inquiry needs to be made, and that was available. And that's with regard to the issuance of the detainer. And then we also, of course, have the Monell claims against the city. Another matter. I agree. Right. Thank you. Thank you, Judge. Good morning, and may it please the Court. Assistant United States Attorney Brandon Waterman on behalf of the United States. This Court should affirm. Does the law require probable cause for the issuance of an immigration detainer? Your Honor, I'm not specifically familiar on that. For this case, I believe there is certainly a requirement that the Department of Homeland Security conduct certain checks and have certain information at its disposal before it issues a detainer. So the complaint alleges that the agent did not make a reasonable inquiry, that if he had made a reasonable inquiry, he would have seen from the computer records that the individual who had been arrested was a U.S. citizen. Those are the conclusory allegations in the complaint, yes. Not so conclusory. I don't know how conclusory they are. Those are the allegations in any event. Why does that not state a plausible claim that he was kept in detention only because of the detainer? Yes, Your Honor, and the elements for a false imprisonment claim, I think the important one here is whether that confinement was not otherwise privileged. Here the defendant, or the plaintiff in this case, the defendant there, he alleges that he was lawfully arrested by the New York Police Department on a public lewdness charge. He alleges that bail was set and that he alleges he did not pay that bail. He alleges that he would have been released but for the detainer. Yes, Your Honor, and that's a speculative allegation. He can only speculate as to whether he would have ultimately been released. Why would you post $1 bail other than for the fact that you know the person can't get out? You're just doing it so that he can get credit while he's in detention. Well, again, Your Honor, there are no allegations here, or at least no support for the allegation, that in this situation where a bail is set on a criminal charge that the New York State Department of Corrections refuses to honor bails that are posted. There are other cases throughout the country where individuals have alleged plausibly and without dispute that certain facilities do not accept bails when they're posted. Here the plaintiff made absolutely no attempt to post that bail and cannot. Well, why would he? I mean, would he have to have a screw loose to do it? He's sitting in a cell because of your detainer. He's not going to get out if he posts the bail, right? Well, I think that's a completely speculative allegation that he would not. There's nothing speculative about it, is there? Well, Your Honor, there's no sense. He pays the bail. The detainer kicks in and he's held. I don't understand. It seems like some kind of metaphysical analysis as to why he's held. He's held because of the detainer. Well, Your Honor, respectfully, the— What if they'd released him, released him in his own recognizance? What would have happened next? At that point, either New York City has a decision to honor that detainer— And isn't there a written policy that they will? No, Your Honor. I think there's no allegation or at least the New York City local laws that were in effect at the time did not require— The cleaner way to look at this is on the probable cause issue, isn't it? If I get into this whole thing about why he's being held, I mean, the issue is whether they had probable cause to hold him in the first place. And if they did, then we don't have to engage in this huge debate, do we? I think that's a fair point, Your Honor, yes. But as the government was approaching this, we were looking at the elements of the cause for a— I'm not quibbling with the fact that you have to defend both sides of that. But I'm just asking you—Occam's Razor tells us that the simplest solution is the best solution. What's the simplest solution from your standpoint to this case? Well, the simplest solution, Your Honor, if you're suggesting that probable cause would resolve all that, then finding that there was probable cause— If you're right, I'm suggesting that. Correct. I'm not agreeing that you're right, but I'm saying that if you're right, I'm suggesting that. Yes, Your Honor. But going through the other—the actual elements for the causes of action, the plaintiff has failed to allege facts that would satisfy that. Aside from the probable cause element, the plaintiff's confinement here was always on that $1 bail. I understand that the plaintiff alleges that it would not have made sense to post it. If we disagreed with you that that is a conclusory assertion or speculative assertion, do you lose? Respectfully, no, Your Honor. The federal government was not detaining the plaintiff here. The plaintiff at all times was in the custody— Really? Really? Yes, Your Honor. How could that be? I understand Judge Chin's question. He said if you're wrong about that, do you lose? He said no, and then you go ahead and defend the assumption that Judge Chin asked you to make. Well, my understanding is the assumption is that the detention was not otherwise privileged. I'm not asking you those questions with the problems. Go ahead. The detention was privileged because he was being detained because he did not post the $1 bail for that criminal charge. Okay. Otherwise— You also took issue with the—on the first element. The first element is that the defendant here, the officer, intended to confine plaintiff. Don't you issue a detainer with the intent that the person named in the detainer be held? Yes, Your Honor, and— Why isn't—why doesn't the complaint plausibly allege intent to confine the plaintiff? Yes, Your Honor, and if that was the statement in the government's brief that there was no intent to confine, I would agree that the notice of the detainer in itself is a request to detain. It would be the intent. I think that the point the government was trying to make was the defendant or the plaintiff here was not being detained by the federal government. No, I do think it's an important question whether there was probable cause to issue the detainer, and perhaps the parties should brief that question. Sure. You haven't done that, right? I didn't miss it. It's not in the brief? It is not, Your Honor. But as Judge Kaplan had noted, this is an individual who had identical or overlapping names and an identical date of birth. I understand, but is that enough? Is it correct? It's plausibly alleged, I think, that if he had checked the computer, he would have seen that the individual in question was a U.S. citizen. Does that undermine the assertion of probable cause? Are there cases on this? Well, I'll set a schedule when we're done, but I think we need briefing on this. Okay. Yes, Your Honor. Thank you. We'll hear from the city. Thank you. Good morning, Your Honors. Eric Lee for the City of New York. This court should affirm the dismissal of the Monell claim. As we briefed, we offered two grounds for affirming. One was that there was a privileged detention here, and the second, that there was no plausible theory of Monell liability. It sounds like the court has made a decision on the privileged . . . We haven't made any decision. No, we haven't. We're just asking questions. All right. Well, I'll start with that then. I think the key question is, what is the character of his detention, and was it otherwise privileged? Because that is one of the elements of his false imprisonment, false arrest claim. The question isn't the causation . . . To me, the argument is it was privileged because there was a detainer, and you had to comply with the detainer? Is that . . . or is there something else? Two arguments, Your Honor. First, the argument was that he was lawfully detained on a state criminal charge because he did not pay bail. That is an element . . . But the policy, I understand, at least it is alleged that the policy of the city is that if somebody is held on a dollar's bail and would, but for the lack of the dollar, be released, somebody over at Department of Corrections puts up the dollar, and they open the cell. That's the allegation, as I understand it, right? That is the allegation. Okay. So that's a municipal policy, wouldn't you say? That is the policy, but that doesn't take away from the fact that in this case, he was lawfully detained on a state criminal charge that he does not contest. I think if Your Honor is getting to the part about futility, two points on that, Your Honor. First, this futility standard comes from a single judge in Texas in a case that the Fifth Circuit has otherwise discredited. And there's no real analysis in that case, the Mercado case, why futility even matters in this context. Second, as we explained in our brief, even if the Mercado futility standard apply here, his allegations don't pass even that test. He does not allege that he attempted to pay bail and had been rebuffed. There's no allegation that he didn't even attempt to pay bail because he personally believed it is futile. In fact, if you — Let's back up because that's not where I was going. Okay. I understand there's a division of authority as to where local detention pursuant to an immigration detainer violates the Fourth Amendment if it's authorized by federal law. But there's no authorization by federal law to detain him. There's a request, right? But the statute, there's not a federal statute that says to the City of New York, thou shalt hold anybody for whom there's an outstanding removal order, right? Your Honor is correct that these detainers are not mandatory. Pardon me? Yes, you're correct. They're not mandatory. They're not mandatory. Yes. And is it also not correct that under the then provision of the city laws, Local Law 62 of 2011, that's the right one, is it?  Yes. The state authorities are forbidden from holding people because there's a federal detainer with the exception, among perhaps others, of a circumstance in which the person being held is subject to a detainer because there's a removal order. Right. So far? But it doesn't require the city, did not require the city, to hold someone in those circumstances. It just carved someone in those circumstances out of the provision that said thou shalt not hold anybody on detainers with certain exceptions. True? That's right. All right. So at least on the face of Local Law 62, it was up to the city whether or not they were going to hold the guy once on the basis of the federal detainer. Right. Up to the Department of Corrections. Right. And when the Department of Corrections made the decision to hold him, wasn't that an arrest? It was a, yes, it was a detention. But if Your Honor is getting at the fact that it might have violated state law, that doesn't matter for the sake of a Fourth Amendment analysis. And as we explained in our 28J letter, Virginia v. Moore is on this. Virginia v. Moore tells us that the legality of a detention, of an arrest, under the Fourth Amendment is not dependent on state law. Because in that case, the Supreme Court held that a police officer does not violate the Constitution by making an arrest based on probable cause but nevertheless prohibited by state law. That's what we have in this situation, which is why. What does the city do when it receives a detainer and it knows that the detainer is wrong? It knows that the individual is a U.S. citizen. What does the city do in that situation? I don't know. Does the city continue to hold someone on an immigration detainer knowing that the person were a citizen? I don't think so. I think if in the hypothetical the city absolutely knows that the person is a U.S. citizen, I don't think Doc would. What if the hypothetical were if the city had checked in the computer, they would have seen that the person was a citizen? Well, I want to get to that point, Your Honor. He keeps mentioning, the plaintiff, that the New York City Doc database showed that his nativity was in New York. My understanding is that the information that goes into that database is mostly self-reported. And as Judge Kaplan pointed out, there are errors. And the fact that someone, the fact that there is a database that's unverified that says someone. We're at a 12B6 stage and we're talking about the allegations of the complaint and whether it's plausibly alleged that if the city and ICE had checked the computer records, they would have seen that he was a U.S. citizen. Do we not accept that at this point? Sorry? Do we accept that allegation at this point? We accept that allegation, but it doesn't change. If we accept that allegation, what I'm asking is if the city had checked and had found that he was a U.S. citizen, would it have been obliged to keep him detained or would the city have then let the proceedings unfold? He could have paid the dollar or they could have done that plea deal where he was released for three days of community service. Your Honor, that allegation does not change the probable cause analysis. It is akin to him saying, or any person in any false arrest situation saying, that's not me. I'm not the right person. But what the city had in this case is a detainer that specifically said that an order of removal had been obtained. And it had the option to comply or not comply, as you agreed before. Now, you shrugged off the Monell claim, saying if there was a violation of state law, no Monell claim. And, of course, if it's only a violation of state law, that's right. But you have a further problem, don't you? Because this is on a motion to dismiss the complaint. The complaint in the sixth cause of action alleges the facts essential to a state law false imprisonment claim in addition to Monell, doesn't it? But, Your Honor, he's not bringing a false arrest claim against us. He's bringing only a Monell claim against us. Well, that's what the caption of that part of the complaint says. But isn't it a fact that if a complaint pleads facts which gives rise to a right to relief on any basis, it's within the court's ability to grant that relief. Isn't that true? Yes, as a general problem. He could certainly amend the complaint to assert a state law claim against the city, couldn't he? I think he's asked, he had asked to amend his complaint. I think the judge denied that, and he did not appeal. This is actually his third complaint. And I would just want to point out on the Let me finish the point, if I may. And it is simply this. You've agreed that holding him pursuant to the detainer was an arrest by the city. And you needed probable cause for that arrest. And there's certainly a lot of authority in the state courts that this was not good if it went down the way it happened because you had no independent probable cause with respect to the commission of a crime by this man, right? Yes, it was a civil immigration detainer. But the claim that he brought here was a Monell claim. And what a policy, a policy that honors a detainer that says an order of removal has been attained does not violate the Constitution, which is why the Monell claim should be dismissed. All right, thank you. We'll hear the rebuttal. Yes. Thank you, Your Honor. To your question, in footnote six on page seven of a plaintiff's reply brief, I cite Morales v. Chadbourne from the First Circuit, which states that while a detainer is distinct from an arrest, it nevertheless results in the detention of an individual. Morales alleges that after her criminal custody had terminated, she was detained for 24 additional hours based solely on the detainer issued by the ICE agent. Because Morales was kept in custody for a new purpose after she was entitled to release, she was subjected to a new seizure for Fourth Amendment purposes, one that must be supported by a new probable cause justification. And I also failed in my initial presentation to point out that because this was a warrantless arrest, it is the defendant's burden to supply a probable cause justification. It is not— Government meaning the government? Both sides. Both sides. Government and the city? The city can rely upon the federal agents. I mean, the federal agent's knowledge is imputable to the city, isn't it? You'd have to make a separate inquiry. No, Your Honor. So I cited in my reply brief a decision from the Second Department, Wells v. DeMarco, which held that local law enforcement agents have no authority under any law, whether it be state law or federal law, to detain somebody based on a civil immigration detainer. And that is the essential point, as Judge Kaplan pointed out. Virginia v. Moore related to probable cause to arrest for a crime. That's a categorically different thing. A local law enforcement agent needs some— Did the city have a duty to conduct a separate probable cause inquiry on whether to honor the detainer? Yes. Is there a law on that? Well, particularly when they're placed on notice, there's plenty of law in the context for overdetention cases where when somebody who's in a prison and says, You're holding me past my lawful maximum expiration date, and that's brought explicitly to their attention, some steps have to be made to look into this. Isn't your easier argument on that point that if Morales is right in the First Circuit, then the city had to have independent probable cause? And my further question to you would be whether, assuming we send this back to the district court on this Fourth Amendment-slash-false imprisonment claim, you would amend to assert state law clause of action against the city as well? The state law claim can't be brought because no notice of claim was brought. So there's only a Monell claim against the city. But as Your Honor was asking about in the meaning of the local law from 2011, that reflected a conscious choice by the city council to have the Department of Corrections honor detainers that represented, as did this detainer, that an order of removal had been obtained for the target of the detainer. They made it mandatory. They made it mandatory when you read. It's phrased in a strange way. At first, the ordinance states, Thou shalt not. And then it says, That section shall not apply when, and it lists a number of circumstances, including when there's an order of removal. So if the shall not, shall not apply, that equals shall. If that's your position, I think that makes this a lot simpler. Yes, it's an official policy requiring the honoring of the detainer that ineluctably caused the detention. You're using it for Monell to establish the policy, but I'm not sure ultimately it helps you very much. Well, that's all you need to show a Monell claim. You have to have a fourth amendment violation, and I'm not sure about that. Well, I see my time is up. You can take up with the district court if we send it back. Very well. Thank you. We'll reserve the decision. Thank you.